**COURT OF CHANCERY**
**OF THE**
**STATE OF DELAWARE**

LORI W. WILL
VICE CHANCELLOR

LEONARD L. WILLIAMS JUSTICE CENTER
500 N. KING STREET, SUITE 11400
WILMINGTON, DELAWARE 19801-3734

August 5, 2025

Kevin M. Capuzzi, Esquire
Kate Harmon, Esquire
Benesch Friedlander Coplan
  & Aronoff LLP
1313 N. Market Street, Suite 1201
Wilmington, Delaware 19801

Joseph B. Cicero, Esquire
Kelly E. Rowe, Esquire
Mariska Suparman, Esquire
Chipman Brown Cicero & Cole LLP
1313 N. Market Street, Suite 5400
Wilmington, Delaware 19801

RE:   *Cleveland-Cliffs Burns Harbor LLC, et al. v. Boomerang Tube LLC, et al.*, C.A. No. 2022-0378-LWW

Dear Counsel:

I write regarding the parties' cross-requests for leave to move for summary judgment.[1]  Each party opposes the other's request.[2]  After consideration, both requests are denied.

---

[1] Pls.' Letter Requesting Leave to File Partial Summ. J. (Dkt. 141) ("Pls.' Request"); Def.'s Letter Seeking Summ. J. (Dkt. 142) ("Def.'s Request").  This letter opinion assumes an understanding of the overarching dispute.

[2] Def.'s Response to Pls.' Letter Seeking Partial Summ. J. (Dkt. 146) ("Def.'s Response"); Pls.' Response to Def.'s Letter Requesting Leave to File Summ. J. (Dkt. 147) ("Pls.' Response").

## I. BACKGROUND

Cleveland-Cliffs Burns Harbor LLC and Cleveland-Cliffs Steel LLC (collectively, "Cliffs") sued Boomerang Tube, LLC, Black Diamond Capital Management, L.L.C., and PTC Liberty Tubulars, LLC. Cliffs alleges that Boomerang, a manufacturer of oil country tubular goods, failed to pay Cliffs over $7.35 million for steel products. Cliffs also asserts that Boomerang, under the control of Black Diamond, sold its assets through a series of commercially unreasonable foreclosure sales, including a U.C.C. Article 9 sale, to avoid its debts. Cliffs further contends that PTC Liberty—another Black Diamond portfolio company—acquired Boomerang's assets for a fraction of their value and continued Boomerang's business, making PTC Liberty liable for Boomerang's debts under successor liability law.

On September 5, 2023, I granted the defendants' motions to dismiss in part.[3] Left to be resolved is whether PTC Liberty is liable for Boomerang's debts due to successor liability (specifically, the "mere continuation" exception) and whether the Article 9 sale of Boomerang's assets to PTC Liberty was a fraudulent transfer. Now, Cliffs and PTC Liberty each make and oppose requests for leave to move for summary judgment based on their views of the facts and law.

---

[3] Mem. Op. (Dkt. 45).

## II.   ANALYSIS

Summary judgment may be appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[4]  "There is no right to a summary judgment."[5]  "[T]he court may, in its discretion, deny summary judgment if it decides upon a preliminary examination of the facts presented that it is desirable to inquire into and develop the facts more thoroughly at trial in order to clarify the law or its application."[6]

### A.   Cliffs' Request for Leave

Cliffs seeks leave to move for partial summary judgment on its successor liability claim under the "mere continuation" exception.[7]  It argues that the undisputed facts reveal PTC Liberty is a "mere continuation" of Boomerang due to common ownership, directors, officers, employees, and a shared business.[8]

---

[4] Ct. Ch. R. 56(c).

[5] *Telxon Corp. v. Meyerson*, 802 A.2d 257, 262 (Del. 2002).

[6] *In re El Paso Pipeline P'rs, L.P. Deriv. Litig.*, 2014 WL 2768782, at *9 (Del. Ch. June 12, 2014).

[7] Pls.' Request 1.

[8] *Id.* at 2-5.

PTC Liberty disputes these assertions, arguing that the "mere continuation" doctrine is narrow and requires the new entity to be "so dominated and controlled by the old company that separate existence must be disregarded."[9] It points to significant differences in officers, directors, and ownership groups, along with a post-acquisition business transformation.[10]

After reviewing the parties' letters and the record to date, it seems that material facts about the extent of continuity between Boomerang and PTC Liberty remain in dispute. For example, though Cliffs cites a common identity of officers and employees, PTC Liberty counters that none of PTC Liberty's officers were officers of Boomerang and only a few Boomerang employees were hired by PTC Liberty.[11] The extent of control exerted by Black Diamond and whether it constitutes "common ownership" sufficient to establish "mere continuation" is also a contested factual issue. Given these conflicting accounts and the strict standard for establishing the "mere continuation" exception, summary judgment would be imprudent.

---

[9] *Id.* at 1-2 (citing *Ross v. Desa Hldgs. Corp.*, 2008 WL 4899226, at *4 (Del. Super. Sept. 30, 2008)).

[10] *Id.* at 3-5.

[11] *See* Def.'s Response 2, 3.

### B. PTC Liberty's Request for Leave

PTC Liberty seeks leave to move for summary judgment on both the successor liability and fraudulent transfer claims.[12]

Regarding successor liability, PTC Liberty argues that discovery has "debunked" Cliffs' allegations and that there is no genuine issue of material fact to support the "mere continuation" exception.[13] But factual disputes persist as to the "mere continuation" exception's applicability here.[14] These disputes preclude summary judgment.

As for the fraudulent transfer claim, PTC Liberty argues that no "transfer" of "assets" occurred under the Delaware Uniform Fraudulent Transfer Act because the value of the transferred property did not exceed the value of valid liens, and that there is no evidence of fraudulent intent.[15] PTC Liberty states that the value of the assets was at most $95.6 million (or $90.5 million per Cliffs' expert), while the perfected liens totaled approximately $126.4 million.[16]

---

[12] Def.'s Request 1.

[13] *Id.* at 2.

[14] *See supra* Section I.A.

[15] Def.'s Request 3-4.

[16] *Id.* at 4.

But Cliffs insists PTC Liberty "omits that those liens encumbered the entirety of defaulted [Boomerang's] property—not just the assets transferred in the Article 9 sale."[17]  Cliffs states that the total value of Boomerang's property was $140.2 million, implying roughly $14 million of equity available for collection by unsecured creditors.[18]  This directly contradicts PTC Liberty's assertion that the assets were fully encumbered.  Cliffs also claims that the alleged presence of numerous badges of fraud shows Boomerang's fraudulent intent, and that Black Diamond's control over Boomerang and the Article 9 sale supports imputing that intent to Black Diamond.  Trial is needed to resolve this matter.

## III.   CONCLUSION

Considering the disputes of material fact remaining, summary judgment is improper and may prove inefficient.[19]  Even if there were no material factual disputes, "a more thorough exploration of the facts is needed to properly apply the law to the circumstances" presented.[20]

---

[17] Pls.' Response 2.

[18] *Id.*

[19] *Orloff v. Shulman*, 2007 WL 1862742, at *1 (Del. Ch. June 20, 2007) (explaining that the court denies requests for leave to file motions for summary judgment where such proceedings "are apt to waste, rather than conserve, the resources of the parties and the court").

[20] *In re Tri-Star Pictures, Inc., Litig.*, 1995 WL 106520, at *5 (Del. Ch. Mar. 9, 1995).

Both requests for leave to file for summary judgment are denied.

Sincerely yours,

*/s/ Lori W. Will*

Lori W. Will
Vice Chancellor